Sutlifr, J.
The petition states certain facts, upon which the plaintiff relies as a cause of action, arid asks judgment. The demurrer denies that the facts stated constitute a cause of action.
The following is substantially the statement of facts presented by the petition : The plaintiff avers that he is a judgment creditor of the Licking county bank; that said bank was a branch of the state bank of Ohio, organized under the act of 1845; and that in 1852, said Licking county bank committed an act of insolvency, and that shortly afterward the board of control, under said bank act of 1845, appointed the defendant a receiver, into whose hands the remaining assets of said insolvent bank then came; that among the assets were certain credits of the bank, and parcels of’ real estate; that the real estate so belonging to the bank, has not been sold by the receiver, nor by him converted into money for the purposes of said trust, and that plaintiff does not know what disposition has been made of the other assets. The plaintiff then alleges that the defendant has, in disregard of his duties, purchased from the state bank of Ohio all its ben *422 eficial interest in the subject matter of said trust, and received from said state bank, a deed of conveyance of the said real estate, and claims the same as his own; and thereupon the plaintiff asks that the defendant be required to discover, -and account as to the assets so by him received, and that the plaintiff have judgment against him.
From this summary presentation,of the facts stated in the petition, it is evident that the right of action asserted by the plaintiff is one arising under the statute. It is, therefore, incumbent upon the plaintiff to set forth in his petition such facts as. clearly entitle him to a right by force of the statute, or, in other words, to constitute a right within the provisions of the statute, in order to constitute a cause of action.
What right, then, does the statute secure to a creditor of an insolvent bank; and does it afford any as against the receiver, under the state of facts set forth in the petition ?
The following provisions are to be found in the act entitled “ an act to incorporate the state bank of Ohio, and other banking companies,” passed February 24, 1845.
£< Sec. 16. The board of control, from the time of its organization until the first day of May, in the year 1866, and thereafter, until the affairs of the several branches of the state bank of Ohio shall be finally closed up, shall be a body corporate, with succession, and, by the name of£ the state bank of Ohio,’ capable of contracting, and of prosecuting and defending in suits, or actions at law, or in chancery, as fully as natural persons, and of 'doing all other acts and things necessary to effect the object contemplated in this act, by the formation of said board.”
It is provided by section 24, among other things, that upon an act of insolvency by a branch bank, “ all its property, credits, securities, liens, and assets of every description, shall forthwith vest in, and be the property, credits, securities, liens, and assets of the board of control, for the uses and purposes declared in this act.”
Section 25 provides: “ The board of control, on receiving information that any branch of the state bank of Ohio has ■committed an act of insolvency, shall forthwith appoint a *423 committee of one or more of its members, who shall make immediate inquiry into the truth of such information and report thereon to the board; and if the board shall be satisfied from the report of the committee that such branch has suspended the payment of its notes in gold and silver, they shall forthwith appoint a suitable receiver, or receivers, who shall take immediate possession of the books, records, money, choses in action and property of said branch of every description, and hold the same for the joint use and benefit of the other branches of the state bank of' Ohio, and the creditors of said failing branch; and said board of control shall immediately provide money, and place the same in such solvent branch or branches, as may be most convenient, for the purpose of redeeming the notes of such failing branch, and shall give public notice thereof in some newspaper printed in the place where such failing branch is located, and also in some newspaper of general circulation published at Columbus.”
“ Sec. 26. Each solvent branch shall contribute, in the ratio of the circulation to which it is entitled, to the- sum necessary for redeeming the notes of the failing branch, as provided’ in the preceding section, on the requisition of the board of control, and may be remunerated for such contribution from the safety fund, as soon as money sufficient can be raised from that fund, by a sale or hypothecation of the stook, funds, or other" securities belonging thereto.”
“ Sec. 27. The receiver or receivers appointed as provided in the 25th section, shall be. required to give bond in such sum, and with such sureties as the board of control shall judge sufficient; and under the direction of the said board, shall proceed to settle up its affairs, and convert its assets into money; the money so made shall be applied: 1. To reimburse all moneys which shall have been advanced by the several branches for the redemption of the notes and bills of the insolvent branch, and which may not have been previously reimbursed from the safety fund. 2. To reimburse all moneys advanced from the safety fund, other than moneys derived from that portion of the safety fund furnished by the failing branch. 3. To the payment and discharge of all the remaining *424 liabilities of such branch; and 4. The residue shall be divided among the stockholders of the failing branch, in proportion to the stock by them respectively held.”
The foregoing are perhaps all the provisions of the act of 1845, material to consider in determining the sufficiency of the plaintiff’s petition. Those are the particular provisions of the act under which the plaintiff must claim his statutory right of action, in this case.
The petition seems to charge the defendant as a trustee, delinquent in the discharge of his trust. But the provision, in the case of the alleged insolvency of the Licking county bank, as expressed by said section 24, is that — “ its property, credits, liens and assets of every description shall forthwith vest in, and be the property, credits, securities, liens and assets of the board of control, for the uses and purposes declared in the act” — to-wit, 1. To reimburse all moneys which shall be advanced by the several branches, as expressed in section 25; and, 2. To reimburse all moneys advanced from the safety fund, etc. : 8. To the payment and discharge of all the remaining liabilities of such branch; and, 4. To divide the residue, if any, among the stockholders of the insolvent bank.
By section 16, it will be remembered, the “ board of control ” in which the property is thus vested, is made a body corporate, by the name of the “ state bank of Ohio,” capable of contracting, and of prosecuting and defending suits or actions as fully as natural persons, and of doing all other acts and things necessary to effect the object contemplated in the act by the formation of said board.
It therefore follows, from the provisions of section 16 and 24, that the board of control upon the insolvency of a branch bank, became vested with its property, and is capable of controlling, hypothecating, selling or disposing of the same, as would áf natural person fully invested with the title thereof. The “ board of control,” it is true, acts in the discharge of a trust, nevertheless the board is the only legal owner of the assets; after that, by the insolvency of the bank, they became so vested in the board of control by force of the statute. *425 And while the board of control should be held to the faithful discharge of its trust, where its duties are not prescribed by statute, it is obviously left to the same discretion, as is the general owner of property, in the disposal of assets, or the converting them into money.
It is true, that by section 25, it is made the duty of the board of control, in such a case of insolvency of the bank as stated in the petition, to appoint a receiver or receivers to take immediate possession of the assets of the bank, “ and hold the same for the joint use and benefit of the other branches of the state bank of Ohio, and the creditors of said failing branch.” But the appointment of a receiver is only a provisional appointment for the more speedy getting in of the estate or assets, in relation to which the appointment extends, aiad for thé better securing the same for their safety and the benefit of those who may be entitled thereto. A receiver, however, whether appointed by a court, or by a board, as in this case, is the ministerial officer and servant of those from, whom he receives his appointment; and he is responsible for the exercise of good faith and reasonable diligence in the discharge of his duties. But it can not be said that a receiver by virtue of his office in any case, nor by the provisions of the statute in this case, becomes vested with the title to the property or assets which he administers. His relation to the property, like that of a constable, sheriff or master in chancery, is merely that of a ministerial officer. And there is nothing in the provision of the statute under consideration, which would authorize the conclusion that the title to all the property and assets of the insolvent bank, thus vested in the board of control by section 24 of the act, was intended to be thereby transferred to the receiver upon his appointment, as provided in section 25. But, on the contrary, it is expressly provided by section 27, that the receiver “ under the direction of said board shall proceed to settle up the affairs,” etc.
It is evident, therefore, that the board of control so created and empowered by ’section 16, and so vested with the title of all the property of such insolvent bank by section 24, to hold and dispose of, in trust for the parties in interest, continued *426 to sustain the relation of trustee, and was to be regarded as the legal owner of said assets; and that the defendant in the discharge of his duties as receiver, acts under the direction of said board of control.
The gist of the action, as stated in the petition, would then seem to be, that the defendant had been delinquent in the discharge of his duties as a trustee, to the prejudice of the plaintiff, as a beneficiary of the trust. But the only trust stated in the petition resting upon the defendant is that arising from his office of receiver; and it is not only not charged that the defendant has not acted in accordance with the directions of the board of control, but it is expressly charged that the board of control have sold and conveyed their interest in the assets of the bank to him. Nor is it said that the defendant has not paid the full value of said assets to' the said board of control; and all of the charges of misfeasance, and delinquency of duty made against the defendant, connect him with the board of control, and impliedly, if not expressly, admit that the defendant, has, in those ■ particulars, as well as in others, acted under the direction of the board. The doctrine' of respondeat superior would, therefore, seem opposed to the right of the plaintiff to recover of the ministerial officer of the board of control for so acting under and in accordance with their direction.
Moreover, in the case before us, not only is the board of control not made a party defendant, although under the statute the legal owner of the assets, and the trustee, but there is no allegation in the petition of any want of good faith either on the part of the board of control, or the receiver; nor is it stated that the proceeds of the sale to the receiver are insufficient to satisfy all claims against the bank; nor that, if faithfully administered, the proceeds of the assets could be possibly made to satisfy the preferred liabilities, so as to be applied in any part to the payment of plaintiff’s claim.
We are clearly of the opinion that the petition does not state facts sufficient to constitute a cause of action. Th6 *427 judgment of the court of common pleas sustaining the demurrer must be affirmed.
Scott, O.J., and Peck, Gholson and Brinkerhoee, J.J. concurred.